# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Basharath Khan, | |
| Plaintiff, | Case No. 13 C 8947 |
| v. | |
| County of Cook, D/B/A John H. Stroger, Jr., Hospital of Cook County | Judge John Robert Blakey |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Basharath Ali Khan ("Khan"), sued defendant Cook County, doing business as Stroger Hospital of Cook County ("Stroger"), alleging discrimination. Plaintiff alleges five causes of action: (1) discrimination and harassment under Title VII; (2) discrimination and harassment under 42 U.S.C. § 1981; (3) retaliation under 42 U.S.C. § 1981; (4) retaliation in violation of Title VII; and (5) negligent hiring, retention and supervision. Defendant moved for summary judgment on all claims [88]. That motion is granted in part and denied in part.

## I.  Background

Plaintiff's allegations stem from an incident on July 8, 2012. Prior to this date, Khan had worked at Stroger for twenty-two years as a Clerk V. [24] ¶ 19. As a Clerk V, Khan's duties included registering patients, answering phones, and scheduling appointments. [24] ¶ 19. Khan is a Muslim of Indian descent. *Id.* ¶¶ 10-11. During his employment at Stroger, Khan was the only male, Indian Clerk V

employed in the Emergency Room Division. [96] Ex. 1 at 35; [96] Ex. 6 ¶ 3. Khan alleges that he is also physically disabled as a result of post-polio disorder. [91] Ex. 2 at 29. He has a pronounced limp and walks with difficulty. *Id.* at 184. Khan alleges that during his employment, at least one supervisor made "rude and harassing remarks" about his post-polio condition. [24] ¶ 27. Additionally, Khan alleges that he suffers from depression and high blood pressure. *Id.* at 29. Khan states that he began to suffer from these problems during his employment at Stroger. [24] ¶ 13.

On July 8, 2012, Betty Jones ("Jones") changed Khan's lunch hour from 12:00 pm to 11:00 am. *Id.* 51-52. Jones was Khan's direct supervisor and was responsible for scheduling employee lunch hours. [91] Ex. 3 at 37, 46-49. She also had the ability to fire Khan. [24] ¶ 31. Jones testified that she informed Khan that she was changing his lunch at 9:00 on the morning of July 8. *Id.* at 68. Khan, however, states that he was not informed until 11:10 a.m. – ten minutes after he was supposed to have started his break. [91] Ex. 2 at 53-54. Khan testified that when he asked for an explanation for the change, Jones replied, "Bin Laden, I don't have to give you no reason." *Id.* at 56. Jones denies that she made this statement. [91] Ex. 3 at 71-73. Subsequently, according to Jones, Khan got very close to Jones' face and said, "Black bitch, I'm going to fuck you up, I'm going to kick your ass." *Id.* at 62-63, 67-68. Khan admits that he raised his voice and was stressed, but he testified that he does not remember exactly what he said to Jones. [91] Ex. 2 at 56-59. Khan was then escorted from the hospital. [96] Ex. 1 at 39.

Following the altercation between Jones and Khan, Khan was subject to a disciplinary hearing on July 30, 2012. [91] Ex. 15 at 3. At the hearing, presided over by hearing officer Gathmus Lavender, Stroger identified seven witnesses to the altercation: three patients and four hospital employees. *Id.* at 2. These seven statements all supported Jones's testimony that Khan called her a "black bitch" and threatened her. *See id.* Khan asserts that these statements are untrue. *See id.* Hearing officer Lavender, relying on these seven statements, recommended that Khan should be terminated. *See* [91] Ex.'s 8-13. In making this recommendation, Lavender also relied on Khan's disciplinary record at Stroger, which contained ten disciplinary incidents. [91] Ex. 15 at 3.

One documented disciplinary incident, which occurred in 2005, involved behavior that was similar to that exhibited on July 8th. For that incident, Khan was terminated; he then sued, alleging that he was fired in retaliation for filing a discrimination charge with the Illinois Department of Human Rights in 2004. [91] Ex. 2 at 126. The case proceeded to arbitration, pursuant to Khan's union's collective bargaining agreement. [96] Ex. 15. Subsequently, Khan won an arbitration award reinstating his employment in 2005. *Id.*

During the disciplinary hearing, other hospital employees testified that Jones called Khan "Bin Laden" during the time that he worked at Stroger. [96] Ex. 1 at 46; [96] Ex. 5 at 21. Specifically, Jillian DeJesus testified that she heard Jones call Khan "Bin Laden" more than three times. [96] Ex. 1 at 46. DeJesus testified that she also witnessed Jones harass another employee, Vanessa Owens. *Id.* at 56.

Stroger Hospital has a zero tolerance policy on conduct of this sort. [91] Ex.'s 5, 6. Khan identified DeJesus as a witness on his behalf for the disciplinary hearing. *Id.* at 71. According to Lavender, he contacted DeJesus by telephone but she refused to give a statement. [91] Ex. 15 at 2. DeJesus, however, testified that she never refused to give a statement on behalf of Kahn. [96] Ex. 1 at 73. DeJesus further testified that after Jones began calling Khan "Bin Laden" other employees followed suit and sometimes called Khan "Bin Laden" in front of Jones. *Id.* at 47. Jones did nothing, in her role as a supervisor, to rectify this. *Id.* Concerning these statements, Khan stated that he felt forced to endure the discriminatory comments comparing him to "Bin Laden" or else face further discrimination. [96] Ex. 6 ¶ 24. Stroger Hospital asserts that Khan considered such comments as teasing, however Khan states that he realized he was being discriminated against. [91] Ex. 2 at 141-42. Following the disciplinary hearing, Khan was terminated on September 11, 2012 at Lavender's recommendation. [24] ¶ 22. Khan subsequently brought this suit.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir.2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary

judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District,* 743 F.3d 524, 528 (7th Cir. 2014).

## III.   Analysis

As noted above, in his amended complaint, Khan alleges discrimination and harassment in violation of Title VII (Count I); discrimination and harassment in violation of §1981 (Count II); retaliation in violation of §1981 (Count III); retaliation in violation of Title VII (Count IV); and negligent hiring, retention and supervision (Count V). Ostensibly, Plaintiff has also alleged facts related to a potential violation of the Americans with Disabilities Act. The Court addresses each claim in turn.

### A.   Count I: Title VII Discrimination

Khan alleges both race discrimination and harassment under Title VII. This Court will address the discrimination allegation first and the harassment allegation *infra*. A Plaintiff asserting race discrimination under Title VII may defeat a summary judgment motion by presenting: (1) direct or circumstantial evidence of discrimination (the "direct method"), *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); or (2) indirect evidence that establishes a prima facie case and satisfies the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 801–02 (1973). Because Plaintiff does not specify whether he is attempting to proceed under the direct or indirect method, the Court will consider his claim under both methods.

### 1. Direct Method

The direct method affords two possible paths to trial. First, "a plaintiff can offer direct evidence of discrimination, which is typically an outright admission by the decision maker that the challenged action was undertaken because of the plaintiff's [protected class]." *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir.2014). Second, if a "plaintiff lacks direct evidence, the plaintiff can proceed under the direct method using circumstantial evidence." *Id.* "Circumstantial evidence may include suspicious timing, ambiguous statements, behavior or comments directed at others in the protected class, and evidence that similarly situated employees outside the protected class received systematically better treatment." *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011). The Supreme Court has emphasized that context is important when considering circumstantial evidence. *Ash v. Tyson Foods, Inc.*, 126 U.S. 1195 (2006).

Khan has offered no direct evidence to show that his termination was motivated by discriminatory intent. Instead, he proceeds by presenting circumstantial evidence of discrimination. The record shows that Khan was the only male, Indian Clerk V employed in the Emergency Room Division. [96] Ex. 1 at 35; [96] Ex. 6 ¶ 3. Khan testified that when he asked for an explanation for why his lunch hour was changed, Jones replied, "Bin Laden, I don't have to give you no

reason." [91] Ex. 2 at 56. Other hospital employees testified that Jones called Khan "Bin Laden" during the time that he worked at Stroger. [96] Ex. 1 at 46; [96] Ex. 5 at 21. Specifically, Jillian DeJesus testified that she heard Jones call Khan "Bin Laden" more than three times. [96] Ex. 1 at 46. DeJesus further testified that, after Jones began calling Khan "Bin Laden," other employees followed suit and sometimes called Khan "Bin Laden" in front of Jones. *Id.* at 47. These alleged statements by Jones are circumstantial because they do not relate directly to Khan's termination. Khan stated that he felt forced to endure the "Bin Laden" comments to avoid further discrimination. [96] Ex. 6 ¶ 24. Given the context of the United States' war on terrorism and Bin Laden's attacks on the United States in 2001, the reference to Plaintiff – a Muslim man of Middle Eastern descent – as "Bin Laden" can obviously be deemed offensive under the facts of this case. None of the evidence that Khan presents, however, indicates that this remark relates to the motivation for Khan's termination. In other words, there has been no evidence presented of a causal link between Khan's membership in a protected class and his termination.

Without direct or circumstantial evidence sufficient to show that race was the motivating factor for his termination, Khan attempts to proceed under a "Cat's Paw" Theory. *See Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013) (allowing plaintiff to proceed under the "Cat's Paw" Theory of liability under the direct method when direct or circumstantial evidence did not establish discrimination). In employment discrimination law "the 'cat's paw' metaphor refers

to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Cook v. I.P.C. Intern. Corp.*, 673 F.3d 625, 628 (7th Cir. 2012). A good example of such a degree of influence is "where the party nominally responsible for a decision is, by virtue of her role in the company, totally dependent on another employee to supply the information on which to base that decision." *Brewer v. Board of Trustees of Univ. of Ill.*, 479 F.3d. 908, 917-18 (7th Cir. 2007). Employers can avoid liability under the Cat's Paw Theory, however, by conducting an independent investigation. *See Staub v. Proctor Hospital*, 562 U.S. 411, 421 (2011). Where a "decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker." *Brewer v. Board of Trustees of Univ. of Ill.*, 479 F.3d. 908, 917-18 (7th Cir. 2007) (citing *Byrd v. Ill. Dept. of Public Health*, 423 F.3d 696, 708 (7th Cir. 2005); *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997)). Even though the employer in such situations "must often decide what to do based on nothing more than the conflicting stories of two different employees, the employer will not be liable for the racism of the alleged frame-up artist so long as it independently considers both stories." *Brewer v. Board of Trustees of Univ. of Ill.*, 479 F.3d. 908, 917-18 (7th Cir. 2007) (citing *Lucas v. Chicago Trans. Auth.*, 367 F.3d 714, 730-31 (7th Cir. 2004)).

In this case, Khan cannot succeed under the Cat's Paw Theory because of the independent investigation. Khan attempts to prove that Lavender, the disciplinary hearing officer, was a cat's paw in his termination. However, so long as the decision maker does "not artificially or by virtue of her role in the company" limit her investigation to the biased source, then liability is avoided. *Brewer v. Board of Trustees of Univ. of Il.*, 479 F.3d. 908, 917-18 (7th Cir. 2007). As demonstrated by the undisputed portions of the record, Defendant conducted a disciplinary hearing on July 30, 2012, concerning Khan's altercation with Jones on July 8, 2012. [91] Ex. 15 at 3. The hearing officer heard from seven witnesses to the altercation: three patients and four hospital employees. *Id.* at 2. All seven confirmed Jones's story that Khan called her a "black bitch" and threatened to harm her. *See id.* Khan argues that the attachment of these seven witness statements to Defendant's Motion for Summary Judgment is improper under F.R.C.P. 56 and F.R.E. 801. [98] at 12-13. However, the attached witness statements are admissible because they are used for a non-hearsay purpose. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 796 (7th Cir. 2015); *Boutros v. Avis Rent-A-Car Sys., L.L.C.*, 802 F.3d 918, 924-25 (7th Cir. 2015) (out of court statements to be presented not for their truth but as evidence for why the employee was fired are probative to whether the employee was fired for discriminatory reasons). The witness statements show that the disciplinary hearing officer relied upon more than just Jones' testimony. It is undisputed that Lavender relied on these seven statements when making his recommendation that Khan should be terminated. *See* [91] Ex.'s 8-13. Although

Khan challenges the veracity of these statements, [91] Ex. 15 at 3, whether or not they are true, they do establish that Lavender went beyond Jones's testimony in his investigation. Additionally and significantly, the statements are consistent with Khan's admission that he raised his voice to Jones on July 8, 2012. [91] Ex. 2 at 56-59.

### 2. Indirect Method

Having determined that Khan cannot survive summary judgment under the direct method, this Court will now consider his claim under the indirect method. A plaintiff may defeat summary judgment by presenting indirect evidence that establishes a prima facie case and satisfies the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-02 (1973). Under the indirect method, a plaintiff must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was satisfying his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Once a plaintiff makes this prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). If a defendant articulates such a reason, the burden shifts back to the plaintiff to show that the stated reason is a pretext. *See id.* A pretext is defined as "a lie, specifically a phony reason for some action." *Jackson v. E.J. Brach Corp.*, 176

F.3d 971, 983 (7th Cir. 1999). A pre-textual showing can be a comparison of similarly situated employees treated differently. *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 201-02 (7th Cir. 2013).

With regard to the prima facie case, it is undisputed that Khan is a member of a protected class and that he suffered an adverse employment action. Nevertheless, Khan has failed to show that he was satisfying the employer's legitimate expectations and has failed to offer any evidence that similarly situated employees outside of his protected class were treated differently. Initially, the record includes some evidence that Khan may have been satisfying his employer's legitimate expectations: Khan worked at Stroger for twenty-two years, suggesting that he must have been satisfying expectations. [24] ¶ 19. On the other hand, the record also shows that Khan had a substantial disciplinary record with his employer. [91] Ex. 15 at 3. In particular, the disciplinary hearing report indicates that Khan was terminated once before for behavior that was similar to that exhibited on July 8, 2012. Although that termination was reduced to a 30-day suspension after arbitration, the behavior remained subject to discipline and his work record as a whole included nine other disciplinary incidents as well. Khan has presented no affirmative evidence, such as employment reviews or positive performance evaluations, to show that he was satisfying Stroger's legitimate expectations.

Even if Khan were able to get past the second element of the prima facie case, he still cannot get past the fourth element. Khan has presented no evidence to

show that others employees were treated differently. Nor has Kahn offered any evidence to suggest that Stroger's reason for firing him − his insubordinate and threatening behavior on July 8, 2012 − was a pretext or lie. Absent such evidence, summary judgment in favor of Stroger on this claim is appropriate. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1077 (7th Cir. 2016) ("summary judgment is the 'put up or shut up' moment in a lawsuit") (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)).

### B.     Count I: Title VII Harassment

In Count I, Khan also alleges harassment or hostile work environment under Title VII. To survive summary judgment on a hostile work environment claim, Plaintiff must offer "sufficient evidence demonstrating: (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016)(citing *Nichols v. Michigan City Plant Planning Department*, 755 F.3d 594, 600 (7th Cir. 2014); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *Knox v. Indiana*, 93 F.3d 1327, 1334-35 (7th Cir. 1996)).

Subjective and objective offensiveness requires an inquiry into the alleged harassment itself. Speaking to both offensiveness and severity, the Seventh Circuit has noted that while there is "no 'magic number' of slurs" that indicate a hostile work environment, an "unambiguously racial epithet falls on the 'more severe' end

of the spectrum." *Cerros v. Steel Techs.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (citing *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 673 (7th Cir.1993). Under Title VII, employers are "vicariously liable for hostile work environment harassment perpetrated by a supervisor." *Cerros v. Steel Techs.*, 398 F.3d 944, 950 (7th Cir. 2005).

Khan has presented evidence on all four elements for Title VII harassment. As to the first element, subjective and objective work environment, Khan testified that Jones called him "Bin Laden." [91] Ex. 2 at 53-54. Jones denies this allegation. [91] Ex. 3 at 71-73. However, other hospital employees also testified that Jones called Khan "Bin Laden" during the time that he worked at Stroger. [96] Ex. 5 at 21. DeJesus further testified that, after Jones began calling Khan "Bin Laden," other employees followed suit and sometimes called Khan "Bin Laden" in front of Jones. [96] Ex. 1 at 47. The conduct could be considered subjectively offensive by a jury. As stated *supra*, Khan stated that he felt forced to endure the discriminatory comments comparing him to "Bin Laden" or else face further discrimination. [96] Ex. 6 ¶ 24. Jones' alleged use of the "Bin Laden" nickname to refer to Khan could also be considered objectively offensive by a jury. *See* [91] Ex. 2 at 56; [91] Ex. 3 at 71-73. The Seventh Circuit has found that comments directed toward a Jewish person such as "haughty Jew" and "I know how to put you Jews in your place" were objectively hostile. *See Shanoff v. Illinois Dept. of Human Serves.*, 258 F.3d 696, 698-99 (7th Cir. 2001); *see also Cerros*, 288 F.3d at 1046 (finding a Mexican plaintiff had presented enough evidence to establish an objectively hostile

workplace when he was referred to as "brown boy," "Julio," and "Javior," among other things). Following September 11, 2001, the name "Bin Laden" has often been associated with the worst terror attack on American soil. Given the evidence in the record at this stage of the proceedings, a reasonable jury could conclude that the workplace was both objectively and subjectively offensive.

With regard to the second element, Khan has established that he was the only male, Indian Clerk V employed in the Emergency Room Division. [96] Ex. 1 at 35; [96] Ex. 6 ¶ 3. Using the "Bid Laden" nickname to refer to a Middle Eastern Muslim man is facially motivated by his race and religion. *See Cerros v. Steel Techs.*, 288 F.3d 1040, 1045 (7th Cir. 2002) (Finding "that a reasonable person would perceive that the graffiti, remarks ["brown boy," "Julio," and Javior"], and other harassing conduct were based upon his race and ethnicity"). A reasonable jury could conclude that Khan has presented enough evidence that the remarks made to him were racially motivated.

Khan additionally presents evidence that the conduct was severe or pervasive. *See Cerros v. Steel Techs.*, 288 F.3d 1040, 1047 (7th Cir. 2002) (finding that racial epithets fall on the more severe end of the spectrum). Jillian DeJesus testified that she heard Jones call Khan "Bin Laden" more than three times. [96] Ex. 1 at 46. As stated *supra*, other hospital employees also testified that Jones called Khan "Bin Laden" during the time that he worked at Stroger. [96] Ex. 5 at 21. DeJesus further testified that, after Jones began calling Khan "Bin Laden," other employees followed suit and sometimes called Khan "Bin Laden" in front of

Jones. [96] Ex. 1 at 47. Although this is disputed by Jones, [91] Ex. 3 at 71-73, a reasonable jury could conclude that Khan has presented enough evidence that the conduct was severe or pervasive.

In *Nichols*, the Seventh Circuit noted that "referring to colleagues with such disrespectful language" (there, it was the N-word) is "deplorable and has no place in the workforce" but that courts should nonetheless consider the "totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim." *Nichols*, 755 F.3d at 601 (citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013)). Here, the record presents a close call as to whether Khan has met his burden: on the one hand, the alleged harassment is not physically threatening and is not alleged to have impacted his ability to do his job. On the other hand, the evidence shows that the Bid Laden comment was more than just a one-time occurrence and that the other employees followed Jones' poor example and adopted the slur. And, without question, the slur was directed at him and only at him. Given the relative burdens of persuasion, the Court finds that Khan has offered enough to get to a jury on this point.

To satisfy the last element, Kahn must show that Stroger is liable for Jones' alleged conduct. The evidence shows that Jones is Khan's direct supervisor and is responsible for scheduling employee lunch hours. [91] Ex. 3 at 37, 46-49. She had

the ability to fire Khan. [24] ¶ 31. From this evidence, a reasonable jury could find that Stroger is liable as Khan's employer because Jones was one of Khan's supervisors. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (finding vicarious liability under Title VII for hostile environment created by a supervisor with immediate authority over the employee). Because Khan has presented sufficient evidence as to all four elements of his hostile work environment claim, summary judgment is not appropriate.

### C. Counts II & III: 42 U.S.C. § 1981 Claims

Khan next alleges discrimination and harassment under 42 U.S.C. § 1981 in Count II and retaliation under 42 U.S.C. § 1981 in Count III of his complaint. Section 1981, however, does not create a private right of action against state actors. *See Campbell v. Forest Preserve District of Cook County*, 752 F.3d 665, 669 (7th Cir. 2005) (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735-36 (1989). Thus, Khan's § 1981 claims must necessarily fail. In *Campbell*, the Seventh Circuit found that a § 1981 claim could not be brought against the Forest Preserve District of Cook County because it was a state actor. 752 F.3d 665, 671 (7th Cir. 2005). Similarly, Cook County, doing business as Stroger Hospital, is a state actor.

Despite Plaintiff's failure, this Court notes that 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 702 (1989). A plaintiff need not plead a § 1983 claim explicitly as "no heightened pleading rule requires plaintiffs seeking damages for

violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. Shelby, Miss.*, 135 S. Ct. 346, 347 (2014). Because there is no explicit pleading standard for § 1983, the Court will thus consider whether the underlying claim could survive summary judgment under § 1983.

To succeed on a § 1983 claim, a plaintiff "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy" of the state actor. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735-36 (1989). In other words, state actors cannot be held liable under a theory of respondeat superior under § 1983 for violations of § 1981. *Id.* at 736. Here, Khan presents no evidence that the actions of Jones were motivated by a policy or custom at Stroger Hospital. In fact, the record shows that Stroger had policies and procedures to prevent discrimination, and that it had a zero tolerance policy. [91] Ex.'s 5, 6. There is no evidence that Jones was operating pursuant to any policy of custom. Accordingly, Stroger is entitled to summary judgment on any § 1983 claim to the degree one might be discernible in the complaint.

### D.    Count IV: Title VII Retaliation

In Count IV, Khan alleges retaliation under Title VII. Khan filed discrimination charges with the Illinois Department of Human Rights against a supervisor in 2004 and was fired in 2005. [91] Ex. 2 at 126, [91] Ex. 15 at 3. Thereafter, Khan filed a retaliation charge, which was submitted to arbitration. [91] Ex. 2 at 126. Ultimately, Khan was reinstated after imposition of a lesser

disciplinary sanction. [96] Ex. 15.  Khan argues that his recent termination is in retaliation for his filing a complaint in 2004.  [24] ¶ 53.

The Title VII discrimination framework also applies to Title VII retaliation claims.  *See Burrell v. United Parcel Serv., Inc.*, No. 14-CV-5127, 2016 WL 612854, at *10 (N.D. Ill. Feb. 16, 2016); *see also, supra.*  Under the direct method, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two. *Id.* at *10.  Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that: (1) after filing a charge, the employee was subject to adverse employment action; (2) at the time, the employee was performing her job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. *Id.*

Khan has not presented any direct evidence that his prior charges had anything to do with his most recent termination.  Suspicious timing, with additional facts, may in certain cases indicate a causal link, but "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue."  *Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 913, 918 (7th Cir. 2000)).  Here, Khan has not shown temporal proximity or suspicious timing: there is a seven-year gap between the statutorily protected activity and Khan's

termination. As always, the inference of causation "weakens as the time between the protected expression and the adverse action increases, and then 'additional proof of a causal nexus is necessary.'" *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001) (quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998)). Khan has offered no evidence to link his termination to the prior charges. There is no evidence that the activity involved the same supervisor or anything connecting the two series of events. As above, because Stroger has offered a legitimate reason for firing Khan, the burden shifts to Khan to show that the stated reason is a pretext. As above, he has not met this burden. Because the temporal connection is so tenuous and Khan has not presented any evidence that Stroger Hospital's proffered reason for his termination is a pretext, Khan cannot succeed under the direct method.

For the same reasons Kahn cannot prove a Title VII discrimination claim under the indirect method, Kahn cannot prove a Title VII retaliation claim under the indirect method. *See supra.* Khan fails to present any evidence of similarly situated employees. Thus, summary judgment for Stroger Hospital is proper under both the direct and indirect methods.

### E.     Count V: Negligence

In Count V, Khan alleges negligent hiring and negligent supervision or retention in his complaint. To succeed on this claim, plaintiff would need to prove that the employer knew or should have known that the person hired "had a 'particular' unfitness for the job that would create a foreseeable danger to others"

and that "this particular unfitness was the proximate cause of the plaintiff's injury." *Doe v. Brouillette*, 906 N.E.2d 105, 115-16 (Ill. Ct. App. 2009). Alternatively, to prove negligent training or supervision of an employee, plaintiff must show that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, having this knowledge, failed to supervise the employee adequately, or take other action to prevent the harm." *Id.* However, when a coworker harasses an employee, the employer is liable only if it was negligent in discovering or remedying the harassment. *Lambert v. Peri Formwork Sys.*, 723 F.3d 863, 866 (7th Cir. 2013).

With regard to negligent hiring, Khan has not presented any evidence that Jones had a "particular unfitness" when Stroger hired her or that Stroger knew of any such unfitness. Nor has Khan presented any evidence that Stroger Hospital knew or should have known that Jones would act in an incompetent or unacceptable manner or that Stroger failed to supervise Jones adequately.

Khan has alleged that Stroger knew about the harassment and failed to remedy it. [98] at 8-9. He has failed, however, to provide any evidence of an injury or a causal link between his injury and the alleged actions of Stroger. Without any support, Khan merely makes conclusory allegations of psychological harm in his complaint and in his response to Stroger's Motion for Summary Judgment. [24] ¶ 37; [98] at 3 ("Although it did [result in psychological harm]"). He has not provided any medical testimony or other evidence linking his psychological harm to Jones' conduct or Stroger's failure to take action. Indeed, Khan actually alleges that his

psychological problems started before the alleged harassment began. [24] ¶ 13. Because Plaintiff has presented no evidence concerning injury and causation, summary judgment for Stroger is appropriate for both the negligent hiring and negligent supervision or retention claims.

## F. Disability Claims

Khan does not explicitly plead discrimination based on the Americans with Disabilities Act ("ADA"). In his response to Stroger's motion for summary judgment, however, he argues that he has stated a claim for violation of the ADA. [98] at 13-14. Under notice pleading standards, the statement of pleading needs to give defendant fair notice of what the claim is and the ground upon which it rests. *Erickson v. Pardus*, 551 U.S. 89 (2007). A sufficient claim under the ADA might allege facts that establish a disability, that the employer is aware of the disability, that the disability limits major life activities, that the plaintiff could perform his or her job adequately despite the disability, and that the disability is the reason for the adverse employment action. *See Duda v. Board of Ed. Of Franklin Park*, 133 F.3d 1054, 1059-61 (7th Cir. 1998). On the other hand, an insufficient pleading might only include factual allegations that the plaintiff could perform his or her job sufficiently despite a disability. *See Collins v. OSF Healthcare Sys.*, 262 F.Supp.2d 959, 963-64 (C.D. Il. 2003).

Here, Khan alleges that he is disabled and that it did not detract from his job performance. [24] ¶ 12. Nevertheless, Khan fails to allege facts that indicate a causal link between his disability and his termination. In this regard, his pleadings

are similar to those in *Collins v. OSF Healthcare Sys.*, 262 F.Supp.2d 959 (C.D. Il. 2003). In *Collins*, the complaint alleged that plaintiff's "health was sufficient to perform the requirements of her job." 262 F.Supp.2d 959, 963-64 (C.D. Il. 2003). It also alleged that the defendant refused to allow the plaintiff to return to work because of her disability, "**in violation of the ADA**." *Id.* (emphasis added). Khan alleges that a supervisor made "rude and harassing remarks" about his post-polio condition and that upon information and belief, this supervisor coerced other employees to do the same. [24] ¶¶ 27-28. Nowhere, though does Khan explicitly reference or assert a claim under the ADA, as did the plaintiff in *Collins* and there the pleadings were still found to be insufficient. 262 F.Supp.2d 959, 963-64 (C.D. Ill. 2003). These two statements are similar in substance to the pleadings in *Collins* and thus Stroger would be entitled to summary judgment on any ADA claim to the degree one might be discernible in facts alleged in the complaint.

Even if the Court were to accept Khan's pleadings as sufficient, because this litigation is at the summary judgment stage, Khan must show: (1) that he is disabled; (2) that he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) that the employer took an adverse job action against him because of his disability or failed to make a reasonable accommodation. *Stevens v. Illinois Dept. of Trans.*, 210 F.3d 732, 735-36 (7th Cir. 2000). Khan has not presented any evidence to show that he is disabled within the meaning of the ADA, that he was otherwise qualified to perform the essential functions of his job, or that his termination was a direct result of

discrimination because of his disability. Stroger would be entitled to summary judgment on any ADA claim to the degree one is discernable based upon the facts alleged in the complaint.

## IV.    Conclusion

For the reasons explained above, the Court finds that there are no issues of material fact and that Stroger is entitled to summary judgment with respect to Counts II, III, IV, and V, with respect to any ADA claim (to the degree one is plausibly stated in Plaintiff's complaint), and with respect to Plaintiff's Title VII discrimination claim. Stroger's motion for summary judgment is denied as to Plaintiff's Title VII hostile work environment claim.

Dated: June 28, 2016                          Entered:


                                             _____
                                             John Robert Blakey
                                             United States District Judge